# Pederson v Frost et al

## Oral Argument

# FrostZone

- Fraud against Plaintiff
- Fraud against Dan Fisher
- Fraud against Nian Wu
- Fraud against Alenka Lasic
- Fraud against BZNE shareholders
- Fraud against BioZone employees

# FrostZone (continued)

- Fraudulent takeover of BioZone
- Fraudulent asset transfer to Defendant Opko
- Fraudulent asset transfer to MusclePharm
- Fraudulent misrepresentations to the investing public

# FrostZone (continued)

- Initial pump and dump fraud at BioZone (September 2013)
- Ongoing pump and dump fraud at Defendant CoCrystal (March 2015 peak)

## The Big Lie

- False promise of $8 million investment for research and development at BioZone
- Manipulation of Plaintiff and others using this false promise
- Hundreds of phone calls and emails between Plaintiff and Keller and Maza

# The Big Lie (Continued)

- Fraudulent takeover of BioZone
- Fraudulent asset transfers from BioZone to other Frost gang companies
- Essential for preparation of BioZone for a pump and dump securities fraud

# FrostZone Time Line

1999  Danilo Lasic and Keller invent new drug delivery technology

2000  Plaintiff writes first Qusome® patent for BioZone

2007  Plaintiff begins working for BioZone as a solo attorney in Minnesota

2008  Defendant Keller begins collaboration with Nian Wu

# FrostZone Time Line (continued)

2009    Wu invents EquaSome technology

2010    BioZone has developed a huge patent portfolio

2010    BioZone has developed a new world-wide
        expansion strategy

2010    BioZone seeks funding

FrostZone Time Line (continued)

| | |
|---|---|
| 2011 | Meeting with Frost and his gang in Miami |
| 2011 | The Big Lie begins |
| 2011 | Fraudulent takeover of BioZone |
| 2011 | Looting of BioZone's assets begins |
| 2011 | BioZone reverse merger |
| 2012 | The Big Lie is exposed |
| 2012 | Dan Fisher is fired.  Lee Pederson withdraws.  Nian Wu quits. |

## 2012 Fraud Memo

| | |
|---|---|
| Feb 27 | Opko press release regarding rights to Propofol formulations |
| Mar 18 | Pederson email demanding business rationale |
| Mar 28 | Documentation of fraud in writing in email to Keller. |
| Apr 12 | Pederson withdrawal effective June 1 |
| May 11 | First fraud memo to Keller (5 pages) |
| May 16 | Second fraud memo to CEO Prego-Novo and Keller |
| May 14 | Wu termination of agreement with BioZone |

So sue me.

# FrostZone Time Line (continued)

2012    Dan Fisher sues the Frost gang and contacts the FBI

2013    Fisher settles and the pump and dump begins

2013    Plaintiff realizes the purpose behind the Big Lie

2014    Plaintiff resigns from the California bar and contacts Fisher and Wu

FrostZone Time Line (continued)

2014 New litigation between Fisher and the Frost gang

2014 Fisher and Pederson begin working to expose the Frost gang

2014 Pederson begins contact with the FBI

2015 Pederson and Fisher begin direct contact with the SEC

# FrostZone Time Line (continued)

2017 Fisher settles second round of litigation

2017 Pederson initiates litigation against the Frost gang

2018 Frost gang frauds continue

2018 Today

## Damages from fraud against Plaintiff

- Loss of expected earnings from BioZone
- Reputational harm from the appearance that I participated in the frauds
- Loss from having to give up my California law license in order to be able to communicate with victims (different attorney rules than Minnesota)

Damages from fraud
against Plaintiff (continued)

- Loss of earnings while investigating FrostZone and Frost gang frauds in order to rehabilitate my reputation
- Out-of-pocket losses for writing off my bill to Nian Wu
- Reputational harm from BioZone's failure to pay domestic and foreign patent associates that I engaged on behalf of BioZone

Excerpts from Defendants' Memoranda

1.    Defendants say, "The only connection between Minnesota and the allegations in the Complaint is the fact that Plaintiff now happens to reside here."  (page 1)

2.    Defendants say, "none of the actions purportedly taken in furtherance of the claimed fraud were directed at Plaintiff." (page 2)

3.    Defendants say that Pederson's withdrawal from work with BioZone was "voluntary." (page 23)

4.    Defendants say, "As set forth in the accompanying declarations, no Defendant had continuous and systematic contacts with the State of Minnesota." (page 12)

5.* Defendants have said, "In short, Plaintiff's principle jurisdictional allegations are that he is a resident of Minnesota and that he performed legal services for BioZone in Minnesota."

6.* Defendants have said, "Thus, even if the Court considered the quantity of Defendants' contacts - which approximates zero - this factor would weigh heavily in favor of the Court lacking personal jurisdiction."

7.* Defendants have said, "the Complaint is devoid of any allegations that any Defendant directed any of the conduct that is the subject of this Complaint toward Minnesota."

8. Defendants say, "Put simply, no Defendant has purposely availed himself or itself of the privilege of conducting business in Minnesota, such that any Defendant should reasonably expect to be haled into court in that jurisdiction." (page 17)

9.   Defendants say, "The present dispute has no connection whatsoever to Minnesota other than the fact that Plaintiff is a resident of the state. He was not even providing services under Minnesota law." (page 18)

10.* Defendants have said, "none of the "facts" in the Complaint point to any allegedly wrongful conduct in Minnesota."

11.   Defendants say, "Absent a compelling showing by Plaintiff to the contrary, it is logical to assume that all of the witnesses, documents, and other information relevant to the case are located outside of Minnesota." (page 19)

12.* Defendants have said, "having Minnesota as the forum would be a substantial inconvenience for Defendants."

13.\* Defendants have said, "there is no reason why Defendants should be inconvenienced or suffer any hardship in having to Defend this lawsuit in Minnesota."

14. Defendants say, "As of 2014, Plaintiff could not continue to represent BioZone due to his voluntary resignation from the California bar." (page 23)

15. Defendants say, "any alleged damages suffered by Plaintiff were the result of his voluntary resignation from BioZone." (page 39)

16. Defendants say, "The Amended Complaint is devoid of any allegations that would establish the necessary elements to establish an agency relationship between Keller or Maza and OPKO, Frost or CoCrystal." (page 14)

Excerpts from Defendants' Reply

1. Defendants say, "Plaintiff's Opposition does not establish how Plaintiff suffered any injury-in-fact." (page 2)

2. Defendants say, "Plaintiff cannot show that he suffered any concrete injury." (page 2)

3. Defendants say, "Defendant's actions were not "continuous and systematic enough" for a finding of general jurisdiction." (page 4)

4. Defendants say, "Here the only connection to Minnesota is that Plaintiff allegedly suffered harm in Minnesota because he is based there." (page 10)

5. Defendants say, "Plaintiff cannot reasonably allege that he has suffered any injury-in-fact." (page 11)

Recent Press coverage of the Frost gang

- February 9, 2017 Teri Buhl story:  SEC and DOJ investigating the "investing and trading activities" of Phillip Frost, Barry Honig, and Michael Brauser at BioZone

- January 31, 2018 Wall Street Journal article by Ianthe Dugan on a Frost gang company called Riot Blockchain (RIOT)

- February 16, 2018  Televised CNBC investigative report on RIOT by Michelle Caruso-Cabrera

- Follow-up articles by Bloomberg News and the Denver Post

- March 6, 2018 14,000 word Sharesleuth exposé by Chris Carey detailing a network of illegally paid "pumpers"

# Jurisdiction for the Fraud Claim

Sufficient minimum contacts

-- Phone calls and emails with Keller and Maza

-- Long-arm statute

Connection between contacts and claim

-- The Big Lie / Fraud against Plaintiff

Notions of Fair Play

# Jurisdiction for Tortious Interference

Same analysis as fraud claim

Independent tort or legal violation

(a) Fraud against Plaintiff /
The Big Lie

(b) BioZone Pump and Dump

(c) Systematic Frost gang frauds