# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Lee Michael Pederson, | Civ. No. 17-5580 (WMW/BRT) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Phillip Frost; Opko Health, Inc.; Brian Keller; CoCrystal Pharma, Inc.; and J. Does 1-50, | |
| Defendants. | |

Lee Michael Pederson, *pro se* Plaintiff.

Alexander D. Chiquoine, Esq., Joseph T. Dixon, III, Esq., Fredrikson & Byron, PA, counsel for Defendants.

Brian P. Miller, Esq., and Samantha J. Kavanaugh, Esq., Akerman LLP, counsel for Defendant Frost and Defendant Opko Health, Inc.

Mendy Menachem Piekarski, Esq., Sichenzia Ross Ference Kesner LLP, counsel for Defendant Keller.

Daniel A. Rozansky, Esq., and Michael Amory Sherman, Esq., Stubbs Alderton & Markiles, LLP, counsel for CoCrystal Pharma, Inc.

BECKY R. THORSON, United States Magistrate Judge.

This matter is before the Court on Defendants' Motion to Dismiss Amended Complaint. (Doc. No. 59.) Also before the Court are Plaintiff's Request for Leave of the Court to Present Late-Breaking Facts at Oral Hearing (Doc. No. 67), and Plaintiff's oral request made at the hearing to supplement the record. (*See* Doc. No. 71.) The matter has

been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1. (Doc. No. 42.) On May 29, 2018, this Court held a hearing on the motion to dismiss. (Doc. No. 71.) For the reasons stated below, this Court concludes that it lacks personal jurisdiction over Defendants and, accordingly, recommends that Defendants' motion be granted, this action be dismissed without prejudice, and Plaintiff's requests to supplement be denied.

## BACKGROUND

This dispute arises out of an alleged fraud scheme relating to promised investment funding for the company BioZone's R&D programs focused on drug delivery. (Doc. No. 49, Am. Compl. ¶ 2.) Plaintiff alleges Defendant Philip Frost—a major shareholder, Chairman, and CEO of Defendant Opko Health, Inc.—headed a group, which included Defendant Brian Keller, that planned and executed the securities fraud. (*Id.* ¶¶ 3, 16.) Frost is a resident of Florida; Opko Health, Inc., is a Delaware corporation with its principal place of business in Florida; and Keller is a resident of California. (*Id.* ¶¶ 16, 17, 18.)

In 1999, Plaintiff met Brian Keller, one of the co-founders of a California corporation called BioZone (which later became Defendant CoCrystal Pharma, Inc., a Delaware corporation with its principal place of business in Georgia). (*Id.* ¶¶ 4, 7, 22.) BioZone retained Plaintiff and his associated firms as patent counsel to handle patent and other intellectual property issues from 1999 through May 2007. (*Id.* ¶ 7, 22.) Plaintiff was

2

registered to practice law in both California and Minnesota. (*See id.* ¶¶ 268, 270.) At some point, Plaintiff left his associated firms and continued his law practice as a solo practitioner working out of his Minnesota office.[1] (*See id.* ¶ 23.) In May 2007, BioZone hired Plaintiff as an outside patent attorney for the company. (*Id.*)

Sometime in 2007, BioZone began working with biochemist Dr. Nian Wu, and Plaintiff drafted patent applications naming Wu and Keller as inventors for a new drug delivery technology called QuSomes. (*Id.* ¶¶ 26–27.) According to Plaintiff, while he was working on the Wu technology related to drug delivery, "Keller made repeated oral promises and representations to Pederson that, once outside funding became available, BioZone would give Pederson cash bonuses, stock options, and greatly increased amounts of work and/or an in-house position." (*Id.* ¶ 27.)

In January 2011, once the Wu drug delivery technology was sufficiently developed, BioZone entered into a letter of intent with Frost and others stating their supposed intent to invest in BioZone, and particularly in support of BioZone's R&D programs focused on drug delivery. (*Id.* ¶ 30.) In February 2011, Keller organized a series of meetings in Florida with purported investors, including Frost. (*Id.* ¶ 31.) Plaintiff was present at those meetings. (*Id.* ¶ 33.) According to Plaintiff, Frost and others agreed to invest millions of dollars in BioZone to fund drug development activities. (*Id.* ¶ 31.) Specifically, Plaintiff claims the following:

---

[1] In early 2014, Plaintiff resigned from the California Bar. (*Id.* ¶ 273.)

> . . . Frost and his associates would provide initial funding of eight million dollars to BioZone in exchange for an ownership stake, and that initial funding would be leveraged into a public offering. The total amount of the initial funding and the public offering was projected to be about $15 M. The proceeds would be intended to develop and commercialize the Wu Techonology. Terms were agreed upon and documents were signed.

(*Id.* ¶ 37.) Another meeting took place in New Jersey in July 2011, at which Pederson, Wu, and Keller were present. (*Id.* ¶ 91.)

As patent counsel for BioZone, Plaintiff participated in preparing licenses in connection with Wu's drug delivery technology for QuSomes. (*Id.* ¶ 41.) Plaintiff was also hired by Wu to prosecute a separate technology that was not assigned to BioZone. (*Id.* ¶ 75.)

Ultimately, Frost and the other investors did not invest millions of dollars in BioZone as allegedly agreed to, and Frost and others "took control" of BioZone. (*Id.* ¶ 42.) Wu allegedly lost trust in Plaintiff and terminated his services for patent prosecution of a Sugar Lipid Technology in early January 2012; Wu did not pay Plaintiff for his services or out-of-pocket costs. (*Id.* ¶ 78.) Plaintiff alleges that Keller assured him that funding was still forthcoming, which Plaintiff at the time believed, and convinced Plaintiff that he would be compensated for his time and expenses when the funding came through. (*Id.* ¶¶ 79–81.)

Plaintiff alleges that he was "in almost daily contact" with Keller around January 30, 2012, about the resignation or firing of Dan Fisher (a corporate officer of the now-publicly traded BioZone). (*Id.* ¶ 87.) He also alleges that on February 19, 2012, he

4

received a phone call in Minnesota from Frost (while Frost was in Florida) requesting confidential information regarding the Sugar Lipid Technology, which Plaintiff refused to provide. (*Id.* ¶ 106.) According to Plaintiff, and without his knowledge, BioZone then licensed the Wu technology to Opko shortly thereafter for inadequate consideration; the license was announced publicly in a press release from Opko on February 27, 2012. (*Id.* ¶¶ 107, 111.) After several conversations with Keller and Maza (BioZone's CEO), Plaintiff sent an email demanding that they provide a business rationale for the license to Opko. (*Id.* ¶¶ 114–15.) He received no response. At that point, Plaintiff claims he was convinced that a fraud had been committed and he submitted his resignation and withdrew from representing BioZone in June 2012. (*Id.* ¶¶ 23, 116, 118–19.) Plaintiff claims he has suffered financial losses, reputational harm, and damage to his career based on the alleged fraud and tortious interference. (Doc. No. 65, Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") 12.)

Plaintiff continued to monitor BioZone's public filings as a part of further investigation into the purported fraud. (Am. Compl. ¶ 130.) Based on his investigation, Plaintiff alleges that in September 2013, a "pump and dump" scheme was orchestrated by Frost and his associates in furtherance of the alleged fraud. (*Id.* ¶ 39.) Plaintiff alleges that CoCrystal Pharma, Inc. (the successor to BioZone as of November 27, 2013) and a non-party corporation were used to sell and issue BioZone shares in a purportedly fraudulent manner. (*Id.* ¶¶ 168, 217.)

5

In December 2017, Plaintiff filed suit in Minnesota state court (Hennepin County) against Phillip Frost, Opko Health, Inc., Brian Keller, and CoCrystal Pharma, Inc., asserting claims for fraud and tortious interference with prospective business. (Doc. No. 1, Attach 1; Doc. No. 49, Am. Compl. ¶¶ 293–335.) Defendants removed the action to federal district court based on diversity jurisdiction and moved to dismiss on various grounds, including for lack of personal jurisdiction. Shortly thereafter, Plaintiff filed an Amended Complaint, an Opposition to Defendants' Motion to Dismiss, and a supporting declaration relating to personal jurisdiction. (Doc. Nos. 49, 50, 51.) Defendants' original motion to dismiss therefore became moot. (Doc. No. 56.) Defendants filed a new Motion to Dismiss the Amended Complaint on March 7, 2018, again raising various grounds for dismissal, including for lack of personal jurisdiction. (Doc. No. 59.)

## DISCUSSION

### I. Standard of Review - Personal Jurisdiction

Defendants argue this case should be dismissed for lack of personal jurisdiction. To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), a plaintiff must make a prima facie showing that personal jurisdiction exists. *E.g.*, *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) ("When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists" and "a plaintiff must make a prima facie showing of personal jurisdiction over the challenging defendant"); *Viracon, Inc. v. J & L Curtain Wall LLC*, 929 F. Supp. 2d 878,

882 (D. Minn. 2013). To do so, the plaintiff must provide sufficient evidence "to support a reasonable inference that the defendant[ ] can be subjected to jurisdiction in the [forum] state." *K–V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011). The plaintiff's "showing must be tested, not by the pleadings alone, but by the affidavits and exhibits supporting or opposing the motion."[2] *Id.* at 592 (internal quotations and citations omitted). In the absence of an evidentiary hearing, a court "must view the evidence in a light most favorable to the plaintiff and resolve factual conflicts in the plaintiff's favor[.]" *Fastpath*, 760 F.3d at 820.

A federal court may assume jurisdiction over a nonresident defendant "only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." *Romak USA, Inc. v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004) (quotations omitted). Minnesota's long-arm statute "confers jurisdiction to the fullest extent permitted by the Due Process Clause"; therefore, the Court need only consider due process requirements. *See Coen v. Coen*, 509 F.3d 900, 905 (8th Cir. 2007). To satisfy due process, a defendant must have sufficient "minimum contacts" with the forum state (here, Minnesota) such that maintaining the suit "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Romak*,

---

[2] "When considering whether personal jurisdiction exists, the court may consider matters outside the pleadings; 'the court may inquire, by affidavits or otherwise, into the facts as they exist.'" *Fitzgerald v. Zakheim & Lavrar, P.A.*, 90 F. Supp. 3d 867, 870 (D. Minn. 2015) (quoting *Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir. 1998)).

384 F.3d at 984; *accord, e.g.*, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980). "Minimum contacts is based on the notion that 'those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter.'" *Fastpath*, 760 F.3d at 820 (quoting *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011)). "Sufficient contacts exist when [a] defendant's conduct and connection with the forum state are such that [it] should reasonably anticipate being haled into court there[.]" *Coen*, 509 F.3d at 905 (quotations omitted). Such "contacts requires some act by which the defendant 'purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Fastpath*, 760 F.3d at 821 (quoting *J. McIntyre*, 564 U.S. at 880).

The "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as the result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person." *Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 693–94 (8th Cir. 2003) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). This means that "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Id.* (quoting *Burger King*, 471 U.S. at 475). Contacts between the plaintiff and the forum

State do not satisfy this inquiry. *Id.* "Jurisdiction is proper, however, where the contacts proximately result from action by the defendant himself that create a substantial connection with the forum state." *Stanton*, 340 F.3d at 694 (quoting *Burger King*, 471 U.S. at 475).

Personal jurisdiction based on contacts with the forum state can be either general or specific. "General jurisdiction" is established when an entity has "continuous and systematic" contacts with the forum state sufficient to render the foreign entity "at home" in the forum state. *Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915, 919 (2011). "Specific jurisdiction" is established when the contacts with the forum state specifically relate to the underlying controversy. *Id*. Here, Plaintiff conceded at the hearing that he is only arguing that Defendants are subject to specific jurisdiction in Minnesota.[3]

Whether specific or general jurisdiction is asserted, the Eighth Circuit considers

---

[3] This Court notes that if general personal jurisdiction were asserted by Plaintiff, this Court would find that it is lacking because Defendants' contacts with Minnesota are not continuous and systemic. The record reflects that the individual Defendants are not domiciled in Minnesota, and neither of them have ever owned any real or personal property in Minnesota, nor do they maintain any open bank accounts in Minnesota. (Doc. No. 36, Decl. of Dr. Phillip Frost ("Frost Decl.") ¶¶ 4–5; Doc. No. 38, Decl. of Brian Keller ("Keller Decl.") ¶ 2.) As to the corporate Defendants, neither of them are incorporated or have their principal place of business in Minnesota. (Am. Compl. ¶¶ 17, 19.) Further, neither of them is registered to do business in Minnesota, have offices in Minnesota, own property in Minnesota, have agents or employees in Minnesota, or have accounts open in Minnesota. (Doc. No. 37, Decl. of OPKO Health, Inc. ("OPKO Decl.") ¶¶ 5–9; Doc. No. 39, Decl. of Gary Wilcox ("CoCrystal Decl.") ¶ 3.)

9

five factors in determining whether personal jurisdiction exists: "(1) the nature and quality of the defendant's contacts with the forum; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the forum state's interest in providing a forum for the plaintiff; and (5) the convenience of the parties." *Viracon*, 929 F. Supp. 2d at 882–83 (citing *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003)). The first three factors are of primary importance, while the last two factors are considered secondary. *Pecoraro*, 340 F.3d at 562.

## II. Analysis under the Five-Factor Test

This Court has carefully considered the factors set forth above and concludes that Plaintiff has not established personal jurisdiction for any of the named Defendants. The nature, quality, and quantity of the Defendants' contacts *with Minnesota* is thin.

Plaintiff focuses on the fact that Defendant Keller[4] (and sometimes Maza) communicated with Plaintiff many times by telephone and e-mail over the course of a year, while Plaintiff was in Minnesota, regarding the purported funding for BioZone and

---

[4] Plaintiff asserts that Keller and Maza acted as agents for the corporate Defendants and for Defendant Frost, and that therefore Keller and Maza's communications with Plaintiff in Minnesota also establish personal jurisdiction over the other Defendants. (Pl.'s Opp'n 9–10, 19, 22.) Defendants challenge the assertion that Keller or Maza is an agent of the corporate Defendants or for Frost, and, at a minimum, assert that Plaintiff has not established an agency relationship. (Doc. No. 62, Defs.' Mem. of Law in Supp. of their Mot. to Dismiss ("Defs.' Mem.") 14.) For purposes of this Report and Recommendation, this Court need not make the agency determination. Even if Keller and Maza were acting as agents for the other Defendants, there were not sufficient minimum contacts with Minnesota to establish personal jurisdiction over any of the Defendants.

perpetuating the fraud. (Doc. No. 65, Pl.'s Opp'n 9–10, 19, 22.) But "contact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause." *Woodcock*, 444 F.3d at 956; *see also Fastpath*, 760 F.3d at 823 (stating that some emails and phone calls to the plaintiff in Iowa was not sufficient to establish personal jurisdiction there); *Viasystems, Inc. v. EBM—Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011) (finding no personal jurisdiction where non-resident defendant's contacts consisted of scattered emails, phone calls, and a wire-transfer to forum state); *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 523 (8th Cir. 1996) (stating that the exchange of "dozens of letters and faxes," several phone calls in connection with the contract in dispute, and a choice-of-law provision between parties was insufficient to establish jurisdiction); *S.B. Schmidt Paper Co. v. A to Z Paper Co.*, 452 N.W.2d 485, 487 (Minn. Ct. App. 1990) (stating that long-arm jurisdiction "should not be such that anyone who deals with a Minnesota resident in any way . . . can be brought into the Minnesota courts to respond to a suit"). "Although letters and faxes may be used to support the exercise of personal jurisdiction, they do not themselves establish jurisdiction." *Digi-Tel Holdings*, 89 F.3d at 523. "[O]ur minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285 (quotations omitted). Like the contacts in many cases before this, the emails and phone calls made to Plaintiff do not create a "substantial connection" to Minnesota sufficient to subject Defendants to

personal jurisdiction in the state. *See Fastpath*, 760 F.3d at 824 (referring to the *Viasystems* and *Digi-Tel* cases); *see also Viracon*, 929 F. Supp. 2d at 884 (stating in a case where the parties communicated regularly, "contact by phone or mail is insufficient to justify exercise of persona jurisdiction under the due process clause").

Further, there is no allegation, nor has Plaintiff provided support, that Defendants had any other contact with the State of Minnesota – there is no evidence that Defendants had any employees or offices in Minnesota, ever targeted Minnesotans as customers, or ever traveled to Minnesota pursuant to any agreement or otherwise. Defendant Keller's and Maza's contacts with Plaintiff in this case arguably tie Defendants to Plaintiff, but do not tie Defendants to Minnesota. It has long been held that "[i]t is a defendant's contacts with the forum state that are of interest in determining if in personam jurisdiction exists, not its contacts with a resident." *Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.*, 558 F.2d 450, 455 n.6 (8th Cir. 1977).

Also, in determining whether a defendant should be subject to the court's jurisdiction, courts look at whether a defendant "purposefully directed" its actions at the forum state. *Fitzgerald*, 90 F. Supp. 3d at 873. The primary actions relevant to Plaintiff's claims took place outside of Minnesota. Plaintiff, Frost, and Keller (among others) personally met for a series of meetings in Florida, and later a meeting in New Jersey. It was during these meetings that the alleged fraudulent agreement to invest millions of dollars in BioZone to fund drug development activities was formed. Presumably, the

decisions to ultimately not make the investment and to takeover BioZone (i.e., the fraudulent scheme) were also made outside of Minnesota; Plaintiff has not alleged that these decisions were made in Minnesota or even communicated to him. And according to Plaintiff, those decisions would have been made by Frost and his associates, none of whom Plaintiff has shown has contacts with Minnesota. That the Minnesota Plaintiff felt the effects of Defendants' alleged fraudulent conduct does not mean that a Minnesota court has jurisdiction over the non-resident Defendants consistent with due process. *See Fastpath*, 760 F.3d at 822. "The critical relationship is that 'among the defendant, the forum, and the litigation.'" *Mountaire Feeds, Inc. v. Agro Impex, S.A.*, 677 F.2d 651, 654–55 (8th Cir. 1982) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). Here, Defendants' contacts with Minnesota (i.e., the phone calls, emails, and bills[5] to Plaintiff by Keller and Maza) were "incidental" and did "not constitute a deliberate and substantial connection with the state such that [Defendants] could reasonably anticipate being haled into court there." *Viasystems*, 646 F.3d at 594 (quoting *Burger King*, 471 U.S. at 474–75). As found in *Mountaire Feeds*, "[a]lthough the parties did make telephone calls, exchange correspondence, and use banks to arrange payment, 'the use of arteries of interstate mail, telephone, railway and banking facilities is insufficient, standing along, to satisfy due process.'" *Mountaire Feeds*, 677 F.2d at 656 (quoting *Aaron Ferer & Sons*, 558 F.2d at

---

[5]     At the hearing, Plaintiff referenced that he had billing statements showing the work that he had performed for BioZone. This Court does not question that Plaintiff
(Footnote Continued on Next Page)

453); *see also McQuay, Inc. v. Samuel Schlosberg, Inc.*, 321 F. Supp. 902, 905–06 (D. Minn. 1971) (finding that payment of purchase price in forum state insufficient to support long-arm jurisdiction).

Plaintiff also points to the fact that he is a resident of the State of Minnesota and his attorney office was located there, which is where he performed legal services for Defendants' benefit. (Pl.'s Opp'n 19.) But, "[w]e have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden*, 571 U.S. at 284. "Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be decisive in determining whether the defendant's due process rights are violated." *Id.* (quotations omitted). Even if Defendants knew that Plaintiff was a Minnesota resident, that knowledge cannot create minimum contacts with Minnesota because "the plaintiff cannot be the only link between the defendant and the forum." *Id.* at 285. To find otherwise would "improperly attribute[ ] a plaintiff's forum connections to the defendant and make[ ] those connections decisive in the jurisdictional analysis." *Id.* at 289 (quotations omitted).

Therefore, the three "primary" jurisdictional factors—the nature, quantity, and quality of Defendants' contacts with Minnesota and the relation of those contacts to

---

(Footnote Continued from Previous Page)
performed attorney services and billed for them.

Plaintiff's claims—do not support the exercise of personal jurisdiction.

In addition, the other two "secondary" factors—Minnesota's interest and the convenience of the parties—do not weigh heavy enough in Plaintiff's favor to swing the pendulum to support a finding of personal jurisdiction. The fourth factor—the interest of the forum state—weighs only slightly in Plaintiff's favor. *See Viracon, Inc.*, 929 F. Supp. 2d at 885 (citing *Westley v. Mann*, 896 F. Supp. 2d 775, 792 (D. Minn. 2012) (Ericksen, J., adopting Report & Recommendation of Mayeron, M.J.) (concluding Minnesota's interest was minimal in that case, "a dispute that has no [real] connection to" Minnesota)). And the fifth factor—the convenience of the parties—is neutral since both sides would have witnesses that would be required to travel, whether the forum was Minnesota or some other state. While Minnesota would be a convenient forum for Plaintiff, it would be inconvenient for Defendants and the other third-parties referenced in Plaintiff's Amended Complaint.

Based on this Court's review and analysis of the five factors, this Court concludes that because none of the Defendants purposefully availed themselves of the privilege of conducting business in Minnesota such that they should reasonably expect to be haled into court here, personal jurisdiction does not exist over the Defendants.

## III. Analysis under the "*Calder* effects test"

The "*Calder* effects test" provides that "a defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing that

15

the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—[in the forum state]." *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010) (quotations omitted) (citing *Calder v. Jones*, 465 U.S. 783 (1984)). Plaintiff only recites the above standard and then, in conclusory fashion, states the following: "Under the Calder effects test, all Defendants are subject to jurisdiction in Minnesota." ("Pl.'s Opp'n 25.)

While this test has been described as an "effects" test, "more than mere effects" are required for personal jurisdiction to be present. *Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir. 1992) (stating that even when an intentional tort is alleged and defendant knows a resident plaintiff will be affected, "more than mere effects" are necessary "to bestow personal jurisdiction"). To meet the requirements of *Calder*, a defendant's tortious acts can serve as a source of personal jurisdiction if the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm suffered and which defendant knew was likely to be suffered in the forum state. *Arden*, 614 F.3d at 796. More pointedly, "the challenged conduct must be 'uniquely aimed at the forum state,' . . . which requires more than knowledge that a [plaintiff] will suffer consequences from the conduct." *Viracon*, 929 F. Supp. 2d at 886 (quoting *Dakota Indus.*, 946 F.2d at 1391). For example, failure to pay an in-state plaintiff is "not uniquely or expressly aimed at the

16

forum state . . . or performed for the very purpose of having [its] consequences felt in the forum state." *Viasystems*, 646 F.3d at 594–95 (quotations and citations omitted). Plaintiff asserts "[t]he big lie was directed at Pederson and used to manipulate Pederson while Pederson was in Minnesota." (Pl.'s Opp'n 20.) Without more, "mere effects in [Minnesota] are insufficient to confer personal jurisdiction" over Defendants. *Arden*, 614 F.3d at 797.

Therefore, based on the record before the Court, Plaintiff has not made a prima facie showing of personal jurisdiction over any of the Defendants and this case should be dismissed without prejudice.[6]

### RECOMMENDATION

For the reasons stated above, this Court recommends that:

1. Defendants' Motion to Dismiss Amended Complaint. (Doc. No. 59) be **GRANTED** and Plaintiff's Complaint be **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction;

2. Plaintiff's Request for Leave of the Court to Present Late-Breaking Facts at Oral Hearing (Doc. No. 67), be **DENIED**;

---

[6] Because this Court concludes that it lacks personal jurisdiction over all the Defendants in this case, it does not address the remaining issues raised by Defendants in their motion to dismiss. Also, because the information that Plaintiff requested to supplement the record with, both before and at the hearing, would not change any of the analysis above, this Court denies those requests.

3. Plaintiff's oral request made at the hearing to supplement the record (*see* Doc. No. 71), be **DENIED**; and

4. Judgement be entered accordingly.

Date: July 11, 2018

*s/ Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge

**NOTICE**

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under D. Minn. Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report and Recommendation by **July 25, 2018**. A party may respond to those objections within **fourteen days** after service thereof. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in D. Minn. LR 72.2(c).

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report and Recommendation.